## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

### The Honorable Judge Michael E. Romero

| | |
|---|---|
| In re:<br><br>**HOLY GROUNDS TINY HOMES, LLC**<br><br>*Debtor.* | Case No. 22-13918 EEB<br>Chapter 11 |
| **KEVIN RAMSAY AND ANDRA RAMSAY**<br><br>*Plaintiff's,*<br><br>v.<br><br>**REVELATIONS IN CHRIST MINISTRIES; and REVELATIONS IN CHRIST MINISTRIES, LLC and HOLY GROUNDS REAL ESTATE AND HOLY GROUND TINY HOMES, LLC and MATTHEW SOWASH, Individually**<br><br>*Defendant's.* | Adversary Pro. No. |

---

## COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523 & 11 U.S.C. § 1192

---

COME NOW the Plaintiff's, Kevin Ramsay and Andra Ramsay (collectively, hereinafter referred to as "Plaintiffs" or "Creditors" or "Ramsays"), by and through their attorney Arthur Lindquist-Kleissler, Esq. of the law firm Lindquist-Kleissler & Company, LLC and pursuant to 11 U.S.C. §523 and 11 U.S.C. §1192 and F.R.Bank.P. 4004, 4007, 7001 and C.R.S. § 38-22-127 et. seq., complains to deny the Debtor, Revelations in Christ Ministries aka Revelations In Christ Ministries, LLC ("Debtor" or "Defendant's" or "Revelations") and Holy Ground Tiny Homes, LLC aka Holy Ground Tiny Homes ("Debtor" or "Defendant's" or "Holy Ground") and Holy Ground Real Estate  ("Debtor" or "Defendant's" or "Real Estate") and Matthew Sowash, individually, ("Defendant" or or "Matthew" or Sowash") (collectively "Defendants") dischargeability of debt due and owing to the Plaintiffs, and against all Defendants' for a determination of damages and judgment and as grounds therefore, states and alleges as follows:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 11 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2) and 1471.

2. Plaintiff's, Kevin and Andra Ramsay ("Ramsay") are creditors in the within case and therefore has standing to bring this action pursuant to 11 U.S.C. § 523.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b), pursuant to which this Court has jurisdiction.

4. This is an adversary proceeding inter alia under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4) and (a)(6).

5. The Plaintiffs contracted with Debtors to build a Tiny Home.

6. Defendant's, Revelations in Christ Ministries ("Revelations") filed a Chapter 11 bankruptcy petition as a SubChapterV Debtor on October 7, 2022 bearing case number 22-13919 EEB.

7. Defendant's, Holy Grounds Tiny Homes, LLC ("Holy Ground") filed Chapter 11 bankruptcy petition as a SubChapterV Debtor on October 7, 2022 bearing case number 22-13918 EEB.

8. The Debtors filed a Motion for Joint Administration (Doc#15) on October 10, 2022 of both cases under one case bearing case number 22-13918 EEB.

9. The Court granted the Motion (Doc#17) on October 11, 2022.

10. The Court has jurisdiction under 28 U.S.C. § 1334(b) as well as 28 U.S.C. § 157(b).

11. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), (I), and (J).

12. Plaintiff's damages for civil theft pursuant to C.R.S. § 18-4-405 and C.R.S. § 38-22-127 are not less than the $174,390.00.

## FACTUAL BACKGROUND & ALLEGATIONS

1. The Debtors filed for Chapter 11 bankruptcy relief on October 7, 2022.

2. The Debtors 341 Meeting of Creditors was held on November 10, 2022.

3. Joli Lofstedt, Esq. is the appointed Sub Chapter V Trustee assigned to these case.

4. The deadline to file Proofs of Claim in both cases was December 16, 2022.

5.      Ramsay is a creditor in the case and filed their **Proof of Claim Number 57 in the Revelations bankruptcy on December 7, 2022 which is incorporated by this reference as though fully set forth**.

6.      Ramsay is a creditor in the case and filed their **Proof of Claim Number 26 in the Holy Grounds bankruptcy on December 7, 2022 which is incorporated by this reference as though fully set forth**.

7.      The deadline for filing complaints for dischargeability of debt in each case was January 9, 2023.

8.      Undersigned counsel on January 9, 2023 filed a Motion for Enlargement of Time (Doc#84) for one (1) week through and including January 16, 2023 within which to file its Complaint.

9.      The Court has not ruled on the Motion.  But the within Complaint is filed before January 16, 2023.

10.     Accordingly, the within complaint is timely filed.

11.     On December 20, 2022 the United States Trustee filed a Motion for Expansion of SubChapter V Trustee's Duties (Doc#61) in the Jointly Administered cases.

12.     Roughly from the time of its formation in April of 2020 until August of 2022, Revelations in was in the business of manufacturing and selling tiny homes to individual customers.

13.     In August of 2022, the principal of Revelations, Matthew Sowash, formed Holy ground and effectively transferred the tiny home business from Revelations to Holy Ground. The transfer was precipitated by a garnishment of Revelations' bank account by a judgment creditor.

14.     The § 341 meeting of creditors was conducted on November 10, 2022. At the meeting, approximately sixty (60) creditors entered their appearance on the record and expressed an interest in questioning the Debtors' representative. The meeting lasted approximately two and a half hours, but there was not enough time for all creditors to ask their questions. Accordingly, the meeting was continued to November 22, 2022, at which time questioning continued for approximately five hours, at which time the meeting was concluded.

15.     According to Schedule E/F, Revelations owes 180 individual tiny home customers approximately $5,662,991.42 [Docket No. 26, Case No. 22-13919]. Schedule D lists an additional $765,200 owed to entities that loaned money to Revelations in 2022. *Id*.

16.     On December 13, 2022, Holy Ground filed an Amended Schedule E/F to list eight additional tiny home customers who are collectively owed an additional $302,494.39 [Docket No. 51].

17.     At both the original meeting of creditors and the continued meeting of creditors, a constant and recurring theme amongst the sea of creditors' questions was "What happened and where did the money go?"

18.     In response, Mr. Sowash testified that the Debtors' pre-petition sales model involved "pre-selling" tiny homes. In essence, the Debtors would sell a tiny house to a customer before it was built and the funds from that sale would be deposited into the Debtor's operating account.

19.     Mr. Sowash further testified that in June of 2021, the price of lumber increased 600%. As a result, Revelations began delivering tiny homes at a loss and began using funds from the sale of new tiny homes to manufacture prior orders, slowly falling further and further behind its build schedule and lacking the funds to fulfill current orders.

20.     On November 22, 2022, the UST requested certain amendments and documentation from the Debtors. Included in that inquiry was a request for bank statements for the Debtors covering the period of each Debtor's formation through the petition date.

21.     On December 2, 2022, Debtors provided some, but not all the requested bank statements. Specifically, the Debtor provided bank statements for a checking account ending in x0867 at Chase Bank covering the period from October 2020 through May 2022 and a checking account ending in X1011 at Chase Bank covering the period from June 2022 through July 2022. All statements were in the name of Revelations and no statements have been provided for Holy Ground.

22.     Based on a cursory review of the bank statements provided, the UST has identified the following pre-petition bank accounts apparently held or controlled by Revelations:

- Chase checking account ending in X0867
- Chase checking account ending in X1011
- Chase checking account ending in X1003
- Chase checking account ending in X5863

23.     The account ending in X5863 was not disclosed as a current asset on Revelations' Schedule A/B or as an account that was closed within one year of the bankruptcy filing on the Statement of Financial Affairs. Despite this, it appears that Revelations transferred a significant amount of funds to and from this account in the two (2) years prior to filing. The disposition of any transferred funds cannot be readily discerned without bank statements and an investigation into the Debtors' books and records.

24.     Based on the bank statements provided, the UST has also identified a significant number of cash withdrawals from Revelations' pre-petition bank accounts, the disposition of which cannot be readily discerned without an investigation into the Debtors' books and records. For example, the following represents the total amount of cash withdrawn from Revelations' bank accounts per the statements provided:

- October 2020: $35,350
- November 2020: $33,900
- December 2020: $40,600
- January 2021: $67,000
- February 2021: $59,305
- March 2021: $28,600
- April 2021: $34,500
- May 2021: $169,887.90
- June 2021: $47,500
- July 2021: $18,566.73
- August 2021: $56,800
- September 2021: $55,293
- October 2021: $22,000
- November 2021: $22,500
- December 2021: $31,000
- January 2022: $48,500
- February 2022: $12,000
- March 2022: $10,500
- April 2022: $33,300
- May 2022: $20,500
- June 2022: $4,000
- July 2022: $10,000

**Total: $861,602.63**

25.     The bank statements also reflect additional transfers to and from the account ending in X011, which the UST received statements for, to the other two accounts identified on Schedule A/B, which the UST did not receive statements for. The bank statements the UST received also reflects approximately $5,728,764.24 in checks written between October 2020 and July 2022, but relevant information such as the payee and the purpose for such checks cannot be discerned without copies of the canceled checks and an investigation into the Debtors' books and records.

26.     The debit transactions on the bank statements provided to the UST largely reflect expenses that would be expected of a tiny house manufacturer. However, there are several smaller transactions that, at first blush, appear to be inappropriate for a non-profit tiny house manufacturing organization, such as recurring flights and hotels in Las Vegas.

27.     The following facts are unexplained:

(1) the loss of approximately $5,965,485.81 of customers' money during the 2 years leading up to the bankruptcy filing;

(2) the minimum of $839,102.63 in cash withdrawn from Revelations' bank accounts during that timeframe;

5

(3) the undisclosed Chase Bank checking account ending in X5863 that received transfers from Revelations' other checking accounts during that timeframe; and

(4) the suspect debit transactions on the statements for the Revelations' bank accounts that were provided,

28.     Plaintiff's damages for (1) Breach of Contract or (2) Unjust Enrichment are not less than $58,130.00.  Plaintiff's damages for (3) Deceptive Trade Practices in Violation of the Colorado Consumer Protection Act (4) Civil Theft and (5) Violation of Colorado Trust Fund Statute are not less than $174,390.00.  Plaintiffs have incurred consequential and non-economic damages.  Plaintiffs are entitled to recover their reasonable interest, costs and attorney fees.

29.     Defendants are a manufacturer and seller of tiny homes.  A tiny home is a pre-fabricated modular home under 400 square feet that serves as a permanent residence. Defendants operate its business out of a tiny home factory located in a large warehouse in Arapahoe County, Colorado.

30.     Revelations in Christ Ministries ("Revelations") is a company located at 3697 S Natchas Court, Englewood, CO  80110.

31.     Upon information and belief Matthew Sowash ("Sowash") is the Founder, President, and CEO of Defendant's.

32.     Upon information and belief, Mr. Sowash was previously convicted of a Felony Theft.

33.     Upon information and belief Matthew Sowash is either sole member and owner of Revelations and/or a primary owner of same.

34.     In 2020, Mr. Sowash converted Defendant's, formerly a limited liability company, into a nonprofit corporation.  On its website, Defendant's claim: "All profits from our tiny home business fund our ministry."  Defendant's claim it supports charitable causes.  The sum and substance of those purported cases is undisclosed.

35.     On its website, Defendant's advertise that it sells and delivers tiny homes to consumers throughout the United States: "We deliver anywhere in the United States & Canada for $2.95 / mile."

36.     Defendants further advertise that it has an extensive supply of tiny homes available for immediate purchase: "Move in today!  We have homes available for immediate purchase."

37.     Under the title "Available Now," Defendant's lists descriptions and photographs of multiple tiny home.  In one instance, Defendant's posts a video of Mr. Sowash inside a tiny home, with the description "Want a tiny home fast?  This 24' house will be ready in two weeks!"

38.     Defendants also advertises its tiny homes on Google, YouTube, and TikTok.  On TikTok, Defendant's has over 75,000 followers and over 224,000 likes.  Defendant's frequently posts videos on social media with descriptions of tiny homes.  Defendant's videos indicate that it has an extensive supply of tiny homes that are "Available Now."

39.     In reliance on (1) Defendant's advertisements that it had an extensive supply of tiny homes "Available Now," (2) Defendant's representations that it was a nonprofit corporation that supports charitable causes, and (3) Defendant's promise and assurances that their home would be built and delivered, Plaintiff's accepted Defendant's offer, and paid $51,630.00 on May 20, 2022 to Tint Homes Real Estate and/or Holy Grounds Real Estate for the sale of a tiny home.

40.     Plaintiffs then paid an additional $4,000.00 on July 11, 2022.

41.     According to Defendant's final invoice dated June 9, 2022 Ramsay paid Revelations a total of $58,130.00.

42.     Defendants' frequently did not differentiate between Revelations or Holy Ground.

43.     Even though contracts were often in the name of only one of the entities, customers would be instructed to send monies to the bank account of one of the other entities.

44.     Defendants continued to post online advertisements indicating that its tiny homes were "Available Now."

45.     For example, on February 8, 2022, Defendant's posted a video of a tiny home on TikTok, with a caption stating: "Off Grid Tiny Home Available Now."  The video's description stated: "Cozy lil off-grid ready tiny home.  Built and ready when you are."  That video received 802 likes.

46.     On February 10, 2022, Defendant's posted a video of a tiny home on Tik Tok, with a caption stating: "Want a tiny today?" In the video, Defendant's representative stated: "If you're looking for a tiny home fast, we have three ready for you right now." That video received 1,113 likes.

47.     Based on Defendant's continuing advertisements that it had an extensive supply of tiny homes "Available Now," and its promise and repeated assurances to Plaintiffs of timely delivery, Plaintiffs were comforted that their tiny home would be delivered no later than August 1, 2022.

48.     As Plaintiffs waited for their tiny home to be built, other customers of Defendants' began posting complaints about its business practices on Google, Facebook, and

through the Better Business Bureau. Many customers began complaining that they had paid for their tiny homes as early as the beginning of 2021, but had not received their tiny homes, or a refund therefore, over a year after the promised completion date.

49.     Through Mr. Sowash, Defendants responded to these complaints by claiming that if customers continue to "bash" Defendants' on social media, give bad reviews on Google, or submit complaints to the Better Business Bureau, customers will "bankrupt those homes," and those customers will never receive their orders.

50.     Nevertheless, Defendants' continued to advertise on its website and through social media that it had tiny homes "Available Now."

51.     For example, on June 2, 2022, Defendants' posted a video on TikTok featuring Mr. Sowash, who stated: "If you need a tiny home, I have one right now that you can buy." The video's description stated: "Want a tiny home today? This gorgeous 20' is ready for you right now." That video received 21,200 likes.

52.     On June 3, 2022, Defendants' posted a video on TikTok with a caption stating: "We have 2 homes Available now." The videos' description stated: "Here's another home ready TODAY for pickup or delivery." That video received 1,307 likes.

53.     Again, on June 22, 2022, Defendants' posted a video on TikTok featuring Mr. Sowash, who stated: "If you're looking for a house that you can drive away today, this is the one." The video's caption stated: "Available Now." The video's description stated: "Want a tiny today? We've got a big blue 28' home ready for delivery or pickup." That video received 132,700 likes.

54.     When Plaintiff's sought further clarity, Defendants' representatives handed Plaintiff's a "General Build Progress Letter" that Mr. Sowash had written back in May 2022. The Letter claimed that Defendants' were experiencing operational delays, allegedly because material costs increased by 600% in May of 2021, twelve months before Defendant's sold Plaintiffs their tiny home and assured her it would be delivered no later than August 1, 2022.

55.     Mr. Sowash explained in the "General Build Progress Letter" that, despite Defendant's substantial backlog, it continued to accept new orders in order to bring "stability to our business model." Mr. Sowash claimed the tiny homes would eventually get built. Mr. Sowash affirmatively stated: " In terms of refunds, we must build your home."

56.     That same day, July l, 2022, Defendants' posted a video on TikTok featuring Mr. Sowash, who stated: "We are in a twenty foot, Available Now, house ... Let me show you around." The video's caption stated: "Available Now." The video's description stated: "Ready today. Start your tiny adventure in this 20 ' home .... " That video received 608 likes.

57.     Again, on July 8, 2022, Defendants posted a video on TikTok featuring Mr. Sowash in a tiny home, who stated: "Fourteen foot, Available Now." The video's description

stated: "Available right now! Awesome, affordable 14' tiny home. Ready for pickup or delivery today." That video received 1,563 likes.

58.     But on July 20, 2022, Defendants posted a video on TikTok featuring Mr. Sowash, who stated: "We just got a twenty foot that came off the line, Available Now." The video's caption stated: "Available Now." The video's description stated: "Available now gorgeous 20' tiny home, ready for you to pickup!" That video received 328 likes.

59.     But on July 27, 2022, Defendants posted another video on TikTok featuring Mr. Sowash, who stated: "If you' re looking for a twenty-four foot home in the next couple weeks, I've got it." The video's description stated: "New 24' tiny home available now. Reserve your tiny today." That video received 237 likes.

60.     Nevertheless, on August 3, 2022, Defendants posted a video on TikTok of a tiny home, with a caption stating: "Tiny Homes Ready Today." The video's description stated: "We've got your tiny home ready and waiting! Pickup or delivery anywhere in US or Canada." That video received 1,137 likes.

61.     Defendants never built or delivered to Plaintiff's the tiny home they had paid for.

62.     Defendants refused to give Plaintiff's a refund. Defendants refused to give adequate assurance to Plaintiff's that it would build and deliver the tiny home they had paid for.

63.     Defendants knew or should have known that it did not have an extensive supply of tiny homes "Available Now."

64.     Defendants knew or should have known that it did not have the ability to deliver orders to its customers within the timeframes it promises.

65.     Nevertheless, Defendant's continued to market, sell, and accept payment from consumers for tiny homes it could not and cannot reasonably deliver.

66.     Defendants refused to provide refunds to customers whose tiny homes it did not build.

67.     As detailed above and determined by the United States Trustee the Debtor accepted in excess of $5,000,000.00 of pre-payments from individuals for pre-sold tiny homes.

68.     At the Defendant's own admitted "build rate" it was physically impossible for Defendants to complete and deliver tiny homes within months let alone multiple years.

69.     Although initially stating under oath that he did not receive any benefits from the Debtors, Mr. Sowash ultimately admitted that he lived at locations paid for by the Debtors; that his food was provided by the Debtors; that the Debtors paid the utilities where Mr. Sowash lived; that the Debtors provided transportation for Mr. Sowash at their expense, etc.

70.     Because of Defendant's false and misleading advertisements and representations, Plaintiff's wired their life savings to Defendant's, and can no longer secure a permanent home.

71.     Because of Defendant's false and misleading advertisements and representations, hundreds of consumers throughout Colorado and the United States have wired their life savings to Defendant's, and can no longer secure permanent homes.

72.     On May 12, 2022 Ramsays contacted Holy Ground Tiny Homes and spoke on the phone with JP, sales manager.

73.     On May 14, 2022 Ramsays had appointment on site at Holy Ground Tiny Homes, and spent 4 hours with JP, sales manager.

74.     On May 14, 2022 Ramsays was given an estimated invoice totaling $51,630.00, with the understanding that financing was available along with an 8-9 week turn around.

75.     On May 14, 2022 Ramsays received Tiny Home prices through a text message from JP with the Financing Options available.

76.     On May 17, 2022 Ramsays clarified turn around time with JP.  Turn around time is 7-8 weeks if paid in full.  Trailers coming in weekly and as soon as they are spoken for, there would be no more 7-8 week builds.

77.     If the Ramsays could within the week make payment in full, the delivery would be mid July 2022.

78.     On May 18, 2022, Ramsays requested a conversation with Matthew Sowash to understand the financial options.

79.     On May 18, 2022 Ramsays had a telephone call with Matthew Sowash regarding financing.

80.     On May 18, 2022 Ramsays discussed financing and understood paid in full meant cash wired to them, not financing.

81.     On May 18, 2022 Sowash indicated that Emily will send over a welcome package which was never received in the mail or through email.

82.     On May 18, 2022, Sowash indicated that Samuel, the architect would reach out in about a month to discuss the tiny home.  This communication actually took 2 months approximately.

83.     On May 19, 2022 Ramsays received a final estimate from Holy Ground, via JP for tiny home build.

84.     On May 20, 2022 Ramsays money transfer for $1,100.00 was sent to Holy Ground Real Estate as a down payment for the tiny home.

85.     On May 20, 2022 Ramsays money transfer for $51,630.00 was sent to Holy Ground Real Estate as payment in full to build tiny home.

86.     On May 20, 2022 Ramsays completed the money transfer. Ramsays were told Matthew would send a receipt.

87.     On May 23, 2022, the receipt wasn't received, Ramsays contacted JP to inform him.  Requested it to be sent to another email.  It wasn't, it was sent again to our original email, ramsayandra@gmail.com.

88.     On May 27, 2022 Ramsays asked JP for Emily's phone number to finish up the specifics on the invoice per their request so she could get the tiny home build to Samuel for architecture. Ramsays was told by JP that they should hear from her.

89.     On June 3, 2022 Ramsays decided to add on solar and skirting for the tiny home. Ramsays received an updated invoice but was surprised because they thought the skirting was included.  Debtor adjusted the invoice by $200 discount.

90.     On June 3, 2022 Ramsays asked if Samuel would be contacting them. JP answered Ramsays questions about the skirting.  Ramsays asked if they could pay the invoice with a credit card vs bank transfer.  Ramsay never heard back on this issue.

91.     On June 6, 2022 Ramsays contacted JP again about paying for the skirting and solar.  Ramsays was told that they would hear back on Monday, and again Ramsays never heard back.

92.     On June 8, 2022 Ramsays were in contact with JP and was told they needed to do a wire transfer. Ramsays paid for it with a wire transfer.

93.     On June 18, 2022 Ramsays received an invoice from Gloria, Holy Ground with final invoice showing paid in full for $58,130.00.

94.     On June 21, 2022 Ramsays received an email from Gloria, Holy Ground, with an updated Progress build letter.  It stated apologies, production updates, and a PDF document including 3 options for continuing the builds.  #1 File for bankruptcy, #2 Build the older homes first, #3 Get the business stable and work on both old builds and spec homes.

95.     On June 24, 2022 Ramsays contacted JP in regards to the letter they received about older builds, newer builds and asked Emily to provide the Ramsays clarity on how this affects their build.  Ramsays contacted Emily via email and text and a phone call.  Voicemail was full and couldn't leave a message.  She had not replied to any of Ramsays messages. JP said he could explain.

11

96.     On June 24, 2022 Ramsays had a telephone call with JP explaining the letter and that Ramsays were not directly affected by the letter and that their home is a spec home and that they will be starting the build on their home soon.  Ramsays were told that Samuel would be helping Ramsays with the architecture and then their project would go to Matthew and he and Matthew would be working together as Ramsays project managers for our home.

97.     On June 27, 2022 JP showed Ramsays examples of the tin roof and skirting so they could buy the same material to build the outhouse to go with the home on Ramsays property as it was going to a completely off grid location.

98.     On July 5, 2022 Ramsays contacted JP reminding him that they are at 6 weeks from time of full payment, Ramsays hadn't heard from Samuel, Ramsays were planning for a timeline of delivery and started to get nervous about the completion of the project, July 15 would be 8 weeks and asked JP to please advise.  JP never communicated with Ramsays.

99.     On July 5, 2022 Samuel called and Ramsays contacted JP to thank him.  Samuel informed Ramsays that his hands were tied, that he is the only architect and explained the process.

100.     On July 5, 2022 Ramsays received email from Samuel, Holy Ground architect. Stating all the steps and expectations.  Samuel needed Ramsays floor plan and was using different terminology than JP, and asked that Ramsays explained the floor plan correctly. Ramsays asked JP for help with this and it was put back on Ramsays to provide the information to Samuel.  Ramsays, finally figured out they were talking about the same thing.  Ramsays confirmed plans via email.

101.     On July 11, 2022 Ramsays received email from Samuel to continue the planning and architectural drafts.  Ramsays wire transfer of $4,000.00 to Holy Ground for skirting and solar additions to the tiny home.

102.     On July 13, 2022 Ramsays sent the floor plan to JP to confirm and he stated he didn't think those were the same and Ramsays let him know that is what Samuel sent Ramsays. Ramsays received email from Samuel with the adjustments to the architectural drafts. Ramsays and Samuel talked on the phone to clarify what the changes were, etc.  Ramsays sent email to Samuel confirming plans and thanking him for his diligence.  Ramsays received email from Samuel with the changes to the plans.  Ramsays sent adjustments to Samuel for the plans. Ramsays received email from Samuel regarding the changes.  Ramsays sent updated adjustments to Samuel for the plans.

103.     On July 14, 2022 Ramsays received email from Samuel regarding the July 13, 2022 changes.

104.     On July 20, 2022 Ramsays updated JP with their progress with Samuel and final approval of plans. Samuel stated that any color changes that Ramsays may have go to JP. Ramsays asked what the next steps were being that they were past our due date and wanted to know what those were.

105.    On July 22, 2022 Ramsays sent JP the colors, he didn't reply what the next steps were. Ramsays asked about Emily replying.  JP said that Emily is control of ALL the builds and that JP no longer had any information but that he would reach out to her.   JP indicated that Ramsays should now contact Gloria with Holy Grounds and ask her about the status of Ramsays home.

106.    On July 26, 2022 Ramsays contacted JP and told him that Ramsays tried contacting Gloria and that Ramsays were ready to drive down and walk in the door.  Ramsays indicated that this delay and lack of information was unacceptable.  JP replied with finding out what is going on and that he would personally update the Ramsays.  No reply with an update ever came.

107.    On July 26, 2022 Ramsays received an email from Matthew, JP cc'd. Stated that he spoke with JP, owned the delays and that they were hoping their new warehouse would be opening. Matthew stated that it will be several more weeks before they could get into the facility to do the build. Sowash stated that he will open up a spot for Ramsays home to be produced in the South location, picking up the trailer next week, hoping to hammer nails on Ramsays home a week from Friday which would be August 5th.   Matthew wasn't even sure if Ramsays had met with Samuel and said he would get the Ramsays plans from Samuel and put them on his desk for production.

108.    On July 26, 2022 Ramsays replied to Matthew, JP, cc'd Kevin stating that Ramsays received his email, Sam completed the plans and they were turned into production que on 7/13/22. Emily approved the changes and adjusted the invoice accordingly.  Asked when Ramsays could expect to speak to him to finalize everything and speak to the electrician regarding a few minor questions.   Ramsays never received a reply to email.

109.    On August 1, 2022 Ramsays emailed Matthew, JP, Kevin and asked about an update regarding the build on their home.  No reply was ever received.

110.    On August 5, 2022 Ramsays received an email from JP stating they are still in the process of getting things going with the Ramsays home and that he will update Ramsays as soon as he had more detailed information.

111.    On August 8, 2022 Ramsays got an email from Holy Ground and contacted JP stating that Ramsays hoped to hear from Matthew soon to know what the update was.  No reply to this email was ever received.

112.    On August 18, 2022 Ramsays emailed JP and asked for an update requesting a response by the 19th. No reply was ever received.

113.    On August 24, 2022 Ramsays contacted JP telling him Ramsays emailed everyone and asking for an update on their home. JP replied with there is no update on the Ramsays home.

114.    On August 24, 2022 Ramsays called JP and discussed the frustration of the situation. JP stated to Ramsays during the call that the money Ramsays paid them was being used to build another persons home and that Matthew is a very busy person and would talk with Ramsays when he had a chance.  Ramsays requested a meeting with Matthew even if it was short and over a zoom.  Ramsays didn't want any more promises, just wanted to know what the timeline was for the build.  He said absolutely that he would get Ramsays a meeting scheduled with Matthew on this day.

115.    On September 9, 2022 Ramsays received an email from Gloria, Holy Ground with a business progress letter and a link to an article mentioned in the letter.  The letter stated the 3 different positions of building, referenced the reports to BBB, and the possible pitfall of a pending project he hopes will help to complete the builds including the Ramsays home.  The article was from the Denver Post reporting the negative impact on his lack of service, his background, and a statement from Matthew Sowash.

116.    On September 10, 2022 Ramsays sent email to JP, Emily, Gloria, and Emily stating Ramsays wanted an update on the position of Ramsays spec home purchased on May 23, 2022 and requesting the purchase agreement they have on file as a reference.

117.    On September 12, 2022 Ramsays contacted JP wanting to know what the options are for a meeting. No response received.

118.    On September 12, 2022 Ramsays received email from Gloria, Holy Ground, stating she sent Ramsays a copy of the agreement from May per Ramsay request.

119.    On September 13, 2022 Ramsays emailed JP needing times for a meeting. No reply received.

120.    On September 14, 2022 Ramsays followed up with JP needing times for a meeting.  No response received.

121.    On September 27, 2022 Ramsays had a telephone call with Emily expressing the Ramsays concern, frustration, need for answers and requested a zoom meeting.  She stated she couldn't answer for Matthew, that he is the project manager, that he would request a zoom meeting with the Ramsays.   Emily stated that she didn't know how to create a zoom meeting so Ramsays said they can do that part for the meeting, Ramsays just need to know the day and time of the meeting so Ramsays could be available.

122.    On September 29, 2022 Ramsays received an email from Emily with JP, Matthew, Gloria cc'd.  Emily stated she was sorry for the delayed reply. Apologized for the delay of communication and that some clients go days, weeks, and months without communication.  Owning that she has done this during the last few months.  Emily stated that Ramsays build would be at the South Shop per Matt, and that she would do her best to get a zoom meeting but the meeting never happened.

14

123.    On October 7, 2022 Ramsays contacted JP asking him for the estimated invoice Ramsays signed in the office on the day they met. No reply was received.

124.    On October 7, 2022 Ramsays received an email regarding the bankruptcy from Revelations in Christ along with a copy of a Notice of Stay.

125.    On October 13, 2022 Ramsays replied to Gloria via email that Ramsays needed the signed agreement and completed with JP on 5/20/22.  Ramsays received an email from Gloria stating that she gave my message to JP so he can send us the signed agreement.  Never received the agreement.

126.    On October 14, 2022 Ramsays received an email with an update on bankruptcy in the form of a newsletter from Holy Ground Tiny Homes, Revelations in Christ.

127.    Pursuant to C.R.S. § 38-22-127, et. seq., Revelations and Holy Ground was required to hold in trust and segregate all funds disbursed to Revelations by any owner and/or lender under their construction contract for the various projects for the payment of Ramsays for the contractual labor and services furnished on the various projects.

128.    Pursuant 10 C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds was prohibited from diverting trust funds received from any owner and/or lender under their construction contract for the various projects to pay other obligations of Revelations and was required to apply these trust funds toward the payment of amounts due and payable to its Sub-subcontractors, suppliers, and vendors on the various projects including Ramsay.

129.    Pursuant to C.R.S. § 38-22-127, et. seq. Revelations and Holy Grounds was required to maintain separate records of account for trust funds disbursed by the various projects.

130.    Upon information and belief, Revelations and Holy Ground have not maintained separate records of account for Trust Funds disbursed or distributed for the various projects including the ones worked on by Ramsays which is required by law.

131.    The inability to meet this accounting requirement constitutes a breach of fiduciary duty.

132.    Revelations and Holy Ground should have used trust fund monies paid on the various projects to pay Ramsay.

133.    Any corporate officer or director, who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of the trust committed by that entity pursuant to C.R.S. § 38-22-127 and is liable for civil theft pursuant to C.R.S. § 18-4-405.

134.    Ramsays provided monies to and at the request of Revelations and Holy Ground for the tiny home build.

135.    Any monies paid to Revelations and Holy Ground on the projects constitute funds to be held in trust for Ramsays pursuant to C.R.S. § 38-22-127 et. seq.

136.    Failure to pay over said funds held in trust to the right party constitutes theft as defined by C.R.S. § 18-4-405.

137.    As manager and sole member of Revelations and Holy Ground, Sowash is personally liable for the failure to comply with the requirements of C.R.S. § 38-22-127 et. seq.

138.    As an officer, director, manager and member of Revelations and Holy Ground, Sowash knowingly caused the misappropriation of trust property by Revelations and Holy Ground and is therefore personally liable for participation in the breach of trust committed by Revelations and Holy Ground pursuant to C.R.S. § 38-22-127 and is liable for civil theft pursuant to C.R.S. § 18-4-405.

139.    The receipt of funds by a general contractor, from customers, which funds are due to vendors but which are not paid to the vendors, are thereby misappropriated by the general contractor from trust funds in the general contractor's possession and control and such misappropriation constitutes a breach of the general contractor's fiduciary duty to the vendor as beneficiary of the trust, and constitutes acts of fraud or defalcation while acting in a fiduciary capacity, larceny, civil theft, and embezzlement.

140.    The principals of a legal entity who misappropriate trust funds are personally liable to the beneficiaries of the trust for the misappropriated funds. See ***Flooring Design Associates v. Novick***, 923 P .2d 2 16 (Colo.App. 1995).

141.    After Ramsays fully performed all of its obligations, Defendant's refused to abide by the terms of the contracts or pertinent Colorado law and are now attempting to discharge the debt in this proceeding.

142.    Through their actions as complained of above, Defendant's obtained money or a monetary benefit from Ramsays through fraud and false pretenses, false representations, or actual fraud.

143.    Through their actions as complained of above, Defendant's obtained money or a monetary benefit from Ramsays through violation of the trust fund statute.

144.    Defendant's had a specific intent to defraud Ramsays at the time of Defendants actions by submitting invoices to be paid and request for payment including wire transfers at a point in time when Defendants knew that they could not comply with its agreements to supply the Plaintiffs with their tiny home as agreed.

145.    Defendants' actions constituted material and false misrepresentations of fact, false pretenses, and fraudulent behavior both at the time of the initial contracts and thereafter while Ramsays was performing the contracts.

16

146.     Defendants' intended that Ramsays rely on those material and false misrepresentations of fact, false pretenses, and fraudulent behavior at the time of Defendants' actions as complained of herein.

147.     Ramsays justifiably relied on Defendants material and false misrepresentations of fact, false pretenses, and fraudulent behavior which induced Ramsays to enter into the contracts with Defendants' and to perform the contracts at a loss of approximately $58.130.00.

148.     Defendants' material and false misrepresentations of fact, false pretenses, and fraudulent behavior have damaged Ramsays in an amount of approximately $58,130.00 which amount may be further amended or adjusted for interest, attorney's fees, and other costs and charges as allowed by the Court.

149.     Defendants' actions as complained of herein constitute a criminal action, theft, as proscribed by C.R.S. § 18-4-40l, which criminal acts have damaged Ramsays in an amount of approximately $174,390.00, which amount may be further amended or adjusted for interest, attorney's fees, and other costs and charges as allowed by the Court.

150.     Defendants' should therefore be denied a discharge of Ramsays claim in the amount of $174,390.00 plus interest, attorney's fees, and other costs and charges as allowed by the Court on the basis that Ramsay's claims arose pursuant to actions by Defendants' constituting actual material and false misrepresentations of fact, false pretenses, fraud, fraud or defalcation while acting in a fiduciary capacity, larceny, civil theft, and embezzlement.

151.     Defendants' actions or inaction as described above constitute, among other things, breaches of express contracts and contracts implied in fact; violations of C.R.S. §§ 38-22-127 and 18-4-401; civil theft; and served to unjustly enrich Defendants at the expense of Plaintiffs. Plaintiff's reserve the right to amend these claims for relief or assert new claims for relief as information becomes available to Plaintiffs through discovery or as deemed appropriate by Plaintiffs.

152.     Section 38-22-127, C.R.S. creates an express trust for the benefit of the property owner, subcontractor and material supplier.  ***In re Western Urethanes, Inc***., 61 B.R. 243 (Bnkrptcy D. Colo. 1998).

153.     The funds paid to Revelations and Holy Ground, Defendants' in connection with the properties by the construction lender and property owners are trust funds pursuant to § 38-22-127, C.R.S.

154.     Defendants' are personally liable for the actions of Revelations and Holy Grounds because they were an officer and director of Revelations and Holy Ground and exercised control and directed the use of the trust funds.  See ***Alexander Company v. Packard***, 754 P.2d 780 (Colo. App. 1998).

155.     Upon information and belief, Defendants' failed to cause the funds to be paid to Plaintiffs, segregated and/or separately accounted for as required by Colorado Law.

156.    Section 38-22-127, C.R.S. states that "any person who violates the provisions of (1) and (2) of this section commits theft, as defined in § 18-4-401, C.R.S."  Defendants' fraudulently appropriated property that had been entrusted to him for the benefit of Plaintiffs.  In re Wallace, 840 F.2d 762, 765 (10th Cir. 1988).

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF - 11 U.S.C. §523(a)(2)(A)
### (False Pretenses, False Representation and/or Actual Fraud)

157.    Plaintiffs incorporate by reference as though fully set forth herein the allegations contained in all paragraphs above.

158.    11 U.S.C. § 523 (a) (2) (A) provides in pertinent part.

A discharge under section 727…of this title does not discharge an individual debtor from any debt-

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

159.    Although a claim under § 523 (a) (2) (A) includes three (3) sub-claims-false pretenses, a false representation, and actual fraud-the Tenth Circuit, in dicta, has grouped the sub-claims together.  Hence, in order to establish a nondischargeable claim under § 523 (a) (2) (A), a creditor must prove, by a preponderance of the evidence, that (1) the debtor made a false representation; (2) the debtor intended to deceive the creditor; (3) the creditor relied on the representation; (4) the creditor's reliance was reasonable; and (5) the debtor's representation caused the creditor to sustain a loss.  ***Grogan v. Garner***, 498 U.S. 279, 286-87 (1991); ***Fowler Bros. v. Young (In re Young)***, 91 F.3d 1367, 1373 (10th Cir. 1996).

160.    Defendant's made representations to Plaintiff's that it would received their tiny home upon payment.

161.    Plaintiffs relied upon these representations, including by continuing to perform after Defendants' failure to provide the tiny home which Plaintiffs had previously paid for.

162.    Defendants' intended that Plaintiffs rely upon these representations, including in order to induce Plaintiff's to continue to provide monies.

163.    Defendants' knew or should have known that they were utilizing trust fund monies for purposes other than paying Plaintiffs subs and materials or in failing to deliver the tiny home.

164.     Defendant's knew or should have known that Plaintiff's was relying upon the Defendant's representations and misrepresentations.

165.     The Defendant's clearly intended to deceive the Plaintiff's.

166.     The Plaintiff's reliance on the Defendant's representations was reasonable.

167.     The Defendant's representations caused the Plaintiff's to sustain a loss including in an amount identified by Plaintiff's Proof of Claim Number 26 in the Holy Ground bankruptcy case and Proof of Claim Number 57 in the Revelations bankruptcy case.

168.     Defendant's knew or should have known that they were out of trust and in violation of the Colorado Trust Fund Statute, C.R.S. § 38-22-127.

169.     Defendant, Mr. Sowash was agent for the Defendants, Revelations and Holy Ground.

170.     The Defendants Revelations and Holy Ground were the principals and representations and misrepresentations made by the agent of the principal constitute representations or misrepresentations of the principals.

171.     The misrepresentations and omissions of the Defendants were material.

172.     The misrepresentations and omissions of the Defendants were material because Plaintiffs would not have continued to pay monies to Defendants.

173.     Plaintiffs reasonably relied upon the false representations by Defendants.

174.     The Plaintiffs reliance on Defendants false representations and omissions were reasonable.

175.     The Defendant's obtained money property and services from the Plaintiff's to purchase the home by false pretenses, false representations and/or actual fraud.

176.     The representations were false and did not represent the truth.

177.     Plaintiff's had relied upon these representations and was defrauded.

178.     Plaintiff's has been damaged in an amount to be determined at the time of Trial.

179.     Plaintiff's has specifically been damaged in an amount as represented by their Proof of Claim Number 26 filed in Holy Ground on December 7, 2022 and Proof of Claim Number 57 in Revelations on December 7, 2022 and is incorporated herein by this reference as though fully set forth.

180.     The above facts and circumstances make the debt pursuant to this claim non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) since it is a debt for money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, or false representation or actual fraud and accordingly pursuant to 11 U.S.C. § 523(a)(2)(A) is not dischargeable.

181.     Plaintiff's damages and injury, and the conduct complained of and caused by Defendant's, was attended by circumstances of fraud, malice, or willful and wanton conduct entitling the Plaintiff's to exemplary/punitive damages pursuant to C.R.S. § 13-21-102.

WHEREFORE, Plaintiff's prays for relief as stated at the conclusion of this pleading.

## SECOND CLAIM FOR RELIEF - 11 U.S.C. §523(a)(4)
### (Fraud Pursuant to 11 U.S.C. § 523(a)(4))

182.     Plaintiff's incorporates by reference all of the paragraphs above, as if fully stated herein.

183.     A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of Title I l does not discharge an individual debtor from any debt for fraud while acting in a fiduciary capacity.  11 U.S.C. § 523(a)(1).

184.     32. C.R.S. § 38-22-127 required funds disbursed to Revelations and Holy Ground to be held in trust for the payment of subcontractors and suppliers on the various projects, thereby imposing a fiduciary duty on Revelations and Holy Ground and Sowash during Revelations and Holy Grounds control of the financial decisions of the company.

185.     Defendant's, Matthew Sowash as officer, director, and operator of Revelations and Holy Ground, fraudulently misrepresented to Plaintiff's that once all previous invoices received from Defendants on the various projects were paid and that Revelations and Holy Ground would deliver the tiny home.

186.     All Defendant's are not only personally liable for the debts herein but said debts are non-dischargeable as debts for theft and debts obtained by fraud or defalcation while acting in a fiduciary capacity.

187.     Defendant's have failed to account for or properly applied trust fund statute payments therefore constituting a defalcation and the resulting debt is non-dischargeable.

188.     Defendant's have breached their duty to separately account for the funds it received on each of the within identified projects.

189.     A failure to account for property expenditures constitutes a violation of the Trust Fund Statute.  Treble damages and attorney's fees are appropriate and are also non-dischargeable.

190.    Upon information and belief Revelations, Holy Ground and/or Sowash received funds for the individual projects but did not use all of the monies for the payment of their labor, equipment, materials, supplies and goods including those for the Ramsays tiny home.

191.    In his capacity as acting manager/member of Revelations and Holy Ground, Sowash was at all material times in complete control of the finances and financial decisions of Revelations and Holy Ground with respect to the disposition of construction contract trust fund payments made by Revelations and/or Holy Grounds on the tiny home project.

192.    Pursuant to C.R.S. § 38-22-127, et. seq., Revelations and Holy Ground was required to hold in trust all funds disbursed to Revelations and Holy Grounds by any owner and/or lender under their construction contract for the various projects for the payment of Ramsays for the contractual labor and services furnished on the various projects.

193.    Pursuant 10 C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds were prohibited from diverting trust funds received from any owner and/or lender under their construction contract for the various projects to pay other obligations of Revelations and Holy Grounds and was required to apply these trust funds toward the payment of amounts due and payable to its Sub-subcontractors, suppliers, and vendors on the various projects including Ramsays.

194.    Pursuant to C.R.S. § 38-22-127, et. seq. Revelations and Holy Grounds were required to maintain separate records of account for trust funds disbursed by the various projects.

195.    Upon information and belief, Revelations and Holy Grounds has not maintained separate records of account for Trust Funds disbursed or distributed for the various projects including the ones worked on the Ramsays tiny home.

196.    The inability to meet this accounting requirement constitutes a breach of fiduciary duty.

197.    As manager and sole member of Revelations and Holy Ground, Sowash is personally liable for the failure to comply with the requirements of C.R.S. § 38-22-127 et. seq.

198.    As an officer, director, manager and member of Revelations and Holy Ground, Sowash knowingly caused the misappropriation of trust property by Revelations and Holy Ground and is therefore personally liable for participation in the breach of trust committed by Revelations and Holy Ground pursuant to C.R.S. § 38-22-127 and is liable for civil theft pursuant to C.R.S. § 18-4-405.

199.     The receipt of funds by a general contractor, from loan proceeds or sales of properties, which are due to vendors are, by Colorado law, held in trust for the benefit of the vendors to whom the funds are owed by the general contractor. See C.R.S. § 38-22-127.

200.     The receipt of funds by a general contractor, from loan proceeds or sales of properties, which funds are due to vendors but which are not paid to the vendors, are thereby misappropriated by the general contractor from trust funds in the general contractor's possession and control and such misappropriation constitutes a breach of the general contractor's fiduciary duty to the vendor as beneficiary of the trust, and constitutes acts of fraud or defalcation while acting in a fiduciary capacity, larceny, civil theft, and embezzlement.

201.     The principals of a legal entity who misappropriate trust funds are personally liable to the beneficiaries of the trust for the misappropriated funds. See *Flooring Design Associates v. Novick,* 923 P .2d 2 16 (Colo.App. 1995).

202.     Through their actions as complained of above, Defendants' obtained money or a monetary benefit from Ramsays through fraud and false pretenses, false representations, or actual fraud.

203.     Through their actions as complained of above, Defendants' obtained money or a monetary benefit from Ramsays through violation of the trust fund statute.

204.     Defendants' had a specific intent to defraud Ramsays at the time of Defendants' actions by submitting to Plaintiffs one or more requests for funds to ostensibly be paid by Ramsays but which funds were instead misappropriated by Defendant's and diverted to other purposes or Defendant's personal benefit without any then existing intent to build the tiny home.

205.     Defendants' actions constituted material and false misrepresentations of fact, false pretenses, and fraudulent behavior both at the time of the initial contracts and thereafter while Ramsays were performing the contracts.

206.     Defendants' intended that Ramsays rely on those material and false misrepresentations of fact, false pretenses, and fraudulent behavior at the time of Defendants' actions as complained of herein.

207.     Ramsays justifiably relied on Defendants' material and false misrepresentations of fact, false pretenses, and fraudulent behavior which induced Plaintiffs to enter into the contracts with Defendants' and to perform the contracts at a loss of approximately $58,130.00.

208.     Defendants' material and false misrepresentations of fact, false pretenses, and fraudulent behavior have damaged Ramsays in an amount of approximately $58,130.00

which amount may be further amended or adjusted for interest, attorney's fees, and other costs and charges as allowed by the Court.

209.      Defendants' actions as complained of herein constitute a criminal action, theft, as proscribed by C.R.S. § 18-4-40l, which criminal acts have damaged Ramsays in an amount of approximately $174,390.00, which amount may be further amended or adjusted for interest, attorney's fees, and other costs and charges as allowed by the Court.

210.      Defendants should therefore be denied a discharge of Ramsay's claim in the amount of $174,390.00 plus interest, attorney's fees, and other costs and charges as allowed by the Court on the basis that Ramsay's claims arose pursuant to actions by Defendant's constituting actual material and false misrepresentations of fact, false pretenses, fraud, fraud or defalcation while acting in a fiduciary capacity, larceny, civil theft, and embezzlement.

211.      Defendants made representations to Plaintiff's that they would receive their tiny home.

212.      Plaintiff's relied upon these representations, including by continuing to perform after Defendant's failure to supply the tiny home.

213.      Defendant's intended that Plaintiff's rely upon these representations.

214.      Defendant's knew or should have known that they were utilizing trust fund monies for purposes other than building Plaintiff's tiny home.

215.      Defendant's knew or should have known that Plaintiff's was relying upon the Defendant's representations and misrepresentations.

216.      The Defendant's clearly intended to deceive the Plaintiff's.

217.      The Plaintiff's reliance on the Defendant's representations was reasonable.

218.      The Defendant's representations caused the Plaintiff's to sustain a loss including in an amount identified by Plaintiff's Proof of Claim Number 26 in the Holy Grounds case and Proof of Claim 57 in the Revelations case.

219.      Defendant's knew or should have known that they were out of trust and in violation of the Colorado Trust Fund Statute, C.R.S. § 38-22-127.

220.      Defendant's Sowash was an agent for the Defendants, Revelations and Holy Grounds.

221.      The Defendant's Revelations was the principal and representations and misrepresentations made by the agent of the principal constitute representations or misrepresentations of the principal.

222.      The misrepresentations and omissions of the Defendant's was material.

223.      The misrepresentations and omissions of the Defendants was material because Plaintiff's would not have continued to pay monies to Defendants.

224.      Plaintiff's reasonably relied upon the false representations by Defendants.

225.      The Plaintiff's reliance on Defendants false representations and omissions were reasonable.

226.      The Defendant's obtained money property and services from the Plaintiff's to purchase the home by false pretenses, false representations and/or actual fraud.

227.      The representations were false and did not represent the truth.

228.      Plaintiff's had relied upon these representations and was defrauded.

229.      Plaintiff's has been damaged in an amount to be determined at the time of Trial.

230.      Plaintiff's has specifically been damaged in an amount as represented by their Proof of Claim Number 26 filed in the Holy Grounds case on December 7, 2022 and Proof of Claim Number 57 filed on December 7, 2022 and is incorporated herein by this reference as though fully set forth.

231.      Plaintiff's damages and injury, and the conduct complained of and caused by Defendant's, was attended by circumstances of fraud, malice, or willful and wanton conduct entitling the Plaintiff's to exemplary/punitive damages pursuant to C.R.S. § 13-21-102.

232.      Defendant's fraudulent actions have resulted in damage to Plaintiff's.

WHEREFORE, Plaintiff's prays for relief as stated at the conclusion of this pleading.

### THIRD CLAIM FOR RELIEF
(Deceptive Trade Practices in Violation of the Colorado Consumer Protection Act)

233.      Plaintiff's incorporates by reference all of the paragraphs above, as if fully stated herein.

234.      The Colorado Consumer Protection Act, C.R.S. § 6-1-105 was intended to prevent deceptive trade practices.

235.      Defendant's has engaged and continues to engage in deceptive trade practices, including, but not limited to:

a.   Knowingly and/or recklessly making false representations as to the availability of its tiny homes and timeframes for delivery;

24

b. Knowingly and/or recklessly making false representations as to its affiliation, connection, and/or association with religious and/or charitable causes;

c. Advertising the availability of its tiny homes and timeframes for delivery with the intent not to deliver as advertised;

d. Advertising tiny homes with intent not to supply reasonably expectable public demand;

e. Employing "bait and switch" advertising by advertising tiny homes as "Available Now," or available within a promised timeframe, and then refusing or failing to deliver the tiny homes within a reasonable time or make a refund therefore;

f. Failing to disclose limited supply, long delays, and/or substantial backlogs when advertising and/or selling tiny homes as "Available now," or available within a promised timeframe, with the intent of inducing consumers to purchase the tiny homes; and/or

g. Threatening legal action to impair the rights of its customers if they complain about Defendant's business practices through public forums.

236.     Defendant's deceptive trade practices occurred in the course of its business as a manufacturer and seller of tiny homes.

237.     Hundreds of actual consumers and thousands of potential consumers have been and continue to be directly affected by Defendant's deceptive trade practices.

238.     Many of the consumers affected by Defendant's deceptive trade practices are under the age of thirty (TikTok's target demographic), located out-of-state, and do not have sufficient assets to purchase alternative housing.

239.     Defendant's deceptive trade practices previously impacted hundreds of consumers who paid Defendant's in advance for tiny homes that Defendant's never delivered.

240.     Defendant's deceptive trade practices have significant potential to affect thousands of consumers in the future, who, in reliance on Defendant's advertisements and representations, are likely to advance payment to Defendant's for tiny homes it cannot reasonably deliver.

241.     Defendant's deceptive trade practices significantly impact the public as actual and/or potential consumers or Defendant's tiny homes.

242.     Plaintiff's is an actual consumer of Defendant's goods and services.

243.     Defendant's deceptive trade practices have caused direct injury to Plaintiff's, who, in reliance on Defendant's advertisements and representations, advanced payment to Defendant's for a tiny home that it cannot reasonably deliver.

25

244.     Defendant's deceptive trade practices have caused consequential injury to Plaintiff's, who, in reliance on Defendant's advertisements and representations, secured land for their tiny home, and can no longer secure the permanent housing.

245.     Defendant's willfully, knowingly, and/or intentionally caused injury to Plaintiff's and its other customers by inducing them into wiring money in advance for tiny homes that it knows or should know it cannot reasonably deliver.

246.     Defendant's has engaged in bad faith conduct.

247.     Under the Colorado Consumer Protection Act, Plaintiff's is entitled to recover from Defendant's three times the amount of their actual damages, not less than $174,390.00, and their reasonable attorney fees.

WHEREFORE, Plaintiff's prays for relief as stated at the conclusion of this pleading.

### FOURTH CLAIM FOR RELIEF – 11 U.S.C. §523(a)(4)
(Defalcation in Fiduciary Capacity)

248.     Plaintiff's incorporates by reference all of the paragraphs above, as if fully stated herein.

249.     A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of Title 11 does not discharge an individual debtor from any debt for defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4).

250.     C.R.S. § 38-22-127 required funds disbursed to Revelations and Holy Ground to be held in trust for the payment or subcontractors and suppliers on the various projects, thereby imposing a fiduciary duty on Revelations and Holy Ground and Revelations and Holy Ground during Revelations and Holy Ground's control of the financial decisions of the company.

251.     Defendants, Sowash as officer, director, and operator of Revelations and Holy Ground, misappropriated trust funds in connection with the various projects while acting in a fiduciary capacity and has failed to account for such funds.

252.     Upon information and belief Revelations and Holy Ground are owned and operated by Matthew Sowash ("Sowash").

253.     Upon information and belief Matthew Sowash is either sole member and owner of Revelations and Holy Ground and/or a primary owner of same.

254.     All Defendants are not only personally liable for the debts herein but said debts are non-dischargeable as debts for theft and debts obtained by fraud or defalcation while acting in a fiduciary capacity.

255.     Defendants have failed to account for or properly applied trust fund statute payments therefore constituting a defalcation and the resulting debt is non-dischargeable.

26

256.     Defendants have breached their duty to separately account for the funds it received on each of the within identified projects.

257.     A failure to account for property expenditures constitutes a violation of the Trust Fund Statute.  Treble damages and attorney's fees are appropriate and are also non-dischargeable.

258.     In his capacity as acting manager/member of Revelations and Holy Grounds, Sowash was at all material times in complete control of the finances and financial decisions of Revelations with respect to the disposition of construction contract trust fund payments received by Revelations on the various projects.

259.     Pursuant to C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds were required to hold in trust all funds disbursed to Revelations by any owner and/or lender under their construction contract for the various projects for the payment of Ramsays for the contractual labor and services furnished on the various projects.

260.     Pursuant 10 C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds was prohibited from diverting trust funds received from any owner and/or lender under their construction contract for the various projects to pay other obligations of Revelations and Holy Grounds and was required to apply these trust funds toward the payment of amounts due and payable to its Sub-subcontractors, suppliers, and vendors on the various projects including Ramsays.

261.     Pursuant to C.R.S. § 38-22-127, et. seq. Revelations and Holy Grounds were required to maintain separate records of account for trust funds disbursed by the various projects.

262.     Upon information and belief, Revelations and Holy Grounds has not maintained separate records of account for Trust Funds disbursed or distributed for the various projects including the ones worked on by Ramsays.

263.     The inability to meet this accounting requirement constitutes a breach of fiduciary duty.

264.     Pursuant to C.R.S. § 38-22-127, et. seq. the Defendant's, and all of them, were fiduciaries with fiduciary duties to the Plaintiff's.

265.     Any corporate officer or director, who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of the trust committed by that entity pursuant to C.R.S. § 38-22-127 and is liable for civil theft pursuant to C.R.S. § 18-4-405.

266.     As manager and sole member of Revelations and Holy Grounds, Sowash is personally liable for the failure to comply with the requirements of C.R.S. § 38-22-127 et. seq.

267.     As an officer, director, manager and member of Revelations and Holy Grounds, Sowash knowingly caused the misappropriation of trust property by Revelations and Holy Grounds and is therefore personally liable for participation in the breach of trust committed by Revelations and Holy Grounds pursuant to C.R.S. § 38-22-127 and is liable for civil theft pursuant to C.R.S. § 18-4-405.

268.     The receipt of funds by a general contractor, from loan proceeds or sales of properties, which are due to vendors are, by Colorado law, held in trust for the benefit of the vendors to whom the funds are owed by the general contractor. See C.R.S. § 38-22-127.

269.     The receipt of funds by a general contractor, from loan proceeds or sales of properties, which funds are due to vendors but which are not paid to the vendors, are thereby misappropriated by the general contractor from trust funds in the general contractor's possession and control and such misappropriation constitutes a breach of the general contractor's fiduciary duty to the vendor as beneficiary of the trust, and constitutes acts of fraud or defalcation while acting in a fiduciary capacity, larceny, civil theft, and embezzlement.

270.     The principals of a legal entity who misappropriate trust funds are personally liable to the beneficiaries of the trust for the misappropriated funds. See ***Flooring Design Associates v. Novick***, 923 P .2d 2 16 (Colo.App. 1995).

271.     Section 38-22-127, C.R.S. creates an express trust for the benefit of the property owner subcontractor and material supplier.  ***In re Western Urethanes, Inc***., 61 B.R. 243 (Bnkrptcy D. Colo. 1998).

272.     Defendant's defalcation has resulted in damages to Plaintiff's.

WHEREFORE, Plaintiff's prays for relief as stated at the conclusion of this pleading.

### FIFTH CLAIM FOR RELIEF - 11 U.S.C. §523(a)(2)(A)
(Non-Disclosure or Concealment or Fraud)

273.     Plaintiffs incorporate by reference all of the paragraphs above, as if fully stated herein.

274.     Defendants Revelations and Holy Grounds as well as Sowash failed to disclose to the Plaintiff's significant and material facts.

275.     There was absolutely no way that Defendants could build the Plaintiff's tiny home in the time periods represented.

276.     There was no way that Defendants could build and deliver to Plaintiff's a tiny home within one year.

277.     The Defendants were not contracting for and building tiny homes on an individual basis.

278.    Defendants were in essence pre-selling potential tiny homes to hundreds of customers without the ability to deliver those products.

279.    Defendants were not maintaining a ledger or accounting of costs and expenses for the Plaintiff's tiny home.

280.    Even the tiny homes that were completed, were sold to members of the public regardless of whether or not it was intended to be built for a contracting customer.

281.    Defendants were co-mingling all of the monies being paid for each tiny home.

282.    Defendants never actually had an intention to build the Plaintiff's tiny home as contracted for.

283.    Principals of the Defendants were siphoning off huge amounts of monies and cash while accepting payments for tiny homes which could not be delivered as contracted for.

284.    Defendants had a duty to disclose these facts.

285.    These facts were material.

286.    Defendants concealed or failed to disclose these facts with the intent of creating a false impression of the actual facts in the mind of the Plaintiff's.

287.    Defendants concealed or failed to disclose these facts with the intent that the Plaintiff's take a course of action which the Plaintiff's would not have taken if Plaintiff's had known the actual facts.

288.    The Plaintiff's took these actions in entering into the Contract to purchase the tiny home, relying on the representations and the assumption that the concealed or undisclosed facts did not exist or were different from what they actually were.

289.    The Plaintiff's reliance was justified.

290.    As a proximate result of the Plaintiff's reliance the Plaintiff's sustained damages in an amount to be determined at the time of trial.

291.    That has a direct and proximate result of Defendants' actions, Plaintiff's has been damaged in an amount in excess of $174,390 as well as for attorney fees and costs in the within litigation.

292.    Defendants' conduct was purposefully committed such that Defendants knew or should have known that their conduct was done heedlessly and recklessly, without regard to the consequences or to the rights of others, particularly the Plaintiff's.

293.    Plaintiff's damages and injury, and the conduct complained of and caused by Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct entitling the Plaintiff's to exemplary/punitive damages pursuant to C.R.S. § 13-21-102.

294.     Plaintiff's are entitled to interest on its damages in accordance with the applicable claims for relief and/or pursuant to C.R.S. § 5-12-101 and 102 et. seq.

295.     As a direct and approximate result of Defendants' actions, Plaintiff's has furthermore been damaged by Defendants' failure to comply with the Contract and Defendants' representations.

296.     As a direct and approximate cause and result of Defendants' actions, Plaintiff's has suffered the damages set forth herein and in an amount to be determined at the time of trial.

297.     The above facts and circumstances make the debt pursuant to this claim non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) since it is a debt for money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, or false representation or actual fraud and accordingly pursuant to 11 U.S.C. § 523(a)(2)(A) is not dischargeable.

WHEREFORE, Plaintiff's prays for relief as stated at the conclusion of this pleading.

## SIXTH CLAIM FOR RELIEF
(Civil Theft Pursuant to C.R.S. § 18-4-405 and C.R.S. § 38-22-127)

298.     Plaintiffs incorporates by reference all of the paragraphs above, as if fully stated herein.

299.     Upon information and belief Revelations and Holy Grounds is owned and operated by Matthew Sowash ("Sowash").

300.     Upon information and belief Matthew Sowash is either sole member and owner of Revelations and Holy Grounds and/or a primary owner of same.

301.     Sowash is the owner and founder of Holy Grounds and Revelations.

302.     In his capacity as acting manager/member of Revelations and Holy Grounds, Sowash was at all material times in complete control of the finances and financial decisions of Revelations and Holy Grounds with respect to the disposition of construction contract trust fund payments received by Revelations and Holy Grounds on the various projects.

303.     Pursuant to C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds were required to hold in trust all funds received by Revelations or Holy Grounds by any owner and/or lender under their construction contract for the various projects for the payment of Ramsays for the contractual labor and services furnished on the Plaintiffs tiny home.

304.     Pursuant 10 C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds were prohibited from diverting trust funds received from any owner and/or lender under their construction contract for the various projects to pay other obligations of Revelations and Holy Grounds and was required to apply these trust funds toward the payment of amounts

due and payable to its Sub-subcontractors, suppliers, and vendors on the various projects including Ramsays.

305.      Pursuant to C.R.S. § 38-22-127, et. seq. Revelations and Holy Grounds were required to maintain separate records of account for trust funds disbursed by the various projects.

306.      Upon information and belief, Revelations and Holy Grounds and Sowash have not maintained separate records of account for Trust Funds disbursed or distributed for the various projects including the ones worked on by Ramsays.

307.      The inability to meet this accounting requirement constitutes a breach of fiduciary duty.

308.      Any corporate officer or director, who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of the trust committed by that entity pursuant to C.R.S. § 38-22-127 and is liable for civil theft pursuant to C.R.S. § 18-4-405.

309.      Any monies paid to Revelations or Holy Grounds on the projects constitute funds to be held in trust for Ramsays pursuant to C.R.S. § 38-22-127 et. seq.

310.      Failure to pay over said funds held in trust to the right party constitutes theft as defined by C.R.S. § 18-4-405.

311.      As manager and sole member of Revelations and Holy Grounds, Sowash is personally liable for the failure to comply with the requirements of C.R.S. § 38-22-127 et. seq.

312.      The receipt of funds by a general contractor, from loan proceeds or sales of properties, which are due to vendors are, by Colorado law, held in trust for the benefit of the vendors to whom the funds are owed by the general contractor. See C.R.S. § 38-22-127.

313.      The receipt of funds by a general contractor, from loan proceeds or sales of properties, which funds are due to vendors but which are not paid to the vendors, are thereby misappropriated by the general contractor from trust funds in the general contractor's possession and control and such misappropriation constitutes a breach of the general contractor's fiduciary duty to the vendor as beneficiary of the trust, and constitutes acts of fraud or defalcation while acting in a fiduciary capacity, larceny, civil theft, and embezzlement.

314.      The principals of a legal entity who misappropriate trust funds are personally liable to the beneficiaries of the trust for the misappropriated funds. See ***Flooring Design Associates v. Novick***, 923 P .2d 2 16 (Colo.App. 1995).

315.      Defendants' actions as complained of herein constitute a criminal action, theft, as proscribed by C.R.S. § 18-4-40l, which criminal acts have damaged Ramsays in an

amount of approximately $174,390.00, which amount may be further amended or adjusted for interest, attorney's fees, and other costs and charges as allowed by the Court.

316.     Defendants' should therefore be denied a discharge of Ramsay's claim in the amount of $174,390.00 plus interest, attorney's fees, and other costs and charges as allowed by the Court on the basis that Ramsay's claims arose pursuant to actions by Defendants' constituting actual material and false misrepresentations of fact, false pretenses, fraud, fraud or defalcation while acting in a fiduciary capacity, larceny, civil theft, and embezzlement.

317.     Defendant's' actions or inaction as described above constitute, among other things, breaches of express contracts and contracts implied in fact; violations of C.R.S. §§ 38-22-127 and 18-4-401; civil theft; and served to unjustly enrich Defendants' at the expense of Plaintiffs.  Plaintiffs reserve the right to amend these claims for relief or assert new claims for relief as information becomes available to Plaintiffs through discovery or as deemed appropriate by Plaintiffs.

318.     Defendant Sowash is personally liable for the actions of Revelations and Holy Grounds because they were an officer and director of Revelations and Holy Ground and exercised control and directed the use of the trust funds.  See ***Alexander Company v. Packard***, 754 P.2d 780 (Colo. App. 1998).

319.     Section 38-22-127, C.R.S. states that "any person who violates the provisions of (1) and (2) of this section commits theft, as defined in § 18-4-401, C.R.S."  Defendants' fraudulently appropriated property that had been entrusted to him for the benefit of Plaintiffs.  In re Wallace, 840 F.2d 762, 765 (10th Cir. 1988).

320.     Defendant's controlled all decisions concerning Revelations and Holy Grounds cash, management, and operation during the period from inception until the filing of the bankruptcy.

321.     Pursuant to C.R.S. § 38-22-127, Defendants', as a fiduciary, were required to maintain separate records of accounting and to keep all funds in trust that were disbursed to Revelations and Holy Grounds on the various projects for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the projects, or who claim, or may claim, against a principal and surety for which such disbursements were made.

322.     Upon information and belief, Defendants Sowash, as officer, director and operator of Revelations and Holy Ground, failed to keep all funds disbursed to it on the various projects in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the projects, or who claim, or may claim, against a principal and surety for which such disbursements were made.

323.     Upon information and belief, Defendants Sowash as officer, director, and operator of Revelations and Holy Grounds failed to maintain separate records of account for the subject construction project.

324.     Any corporate officer or director who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of trust committed by that entity pursuant to C.R.S. § 38-22-1 27 and is liable for civil theft pursuant to C.R.S. § 18-4-1105: C.R.S. § 38-22- 127.

325.     Defendants' actions were carried out with the specific and fraudulent intent to deprive Plaintiffs of the use, value, and benefit of the amounts not held in trust or maintained in separate records of account unlawfully and for the benefit of the Debtors and Sowash.

326.     Defendants' violations of C.R.S. § 38-22-127 constitute civil theft pursuant to C.R.S. § 18-4-405.

327.     Defendants' violations of C.R.S. § 38-22-127 caused Plaintiffs to suffer damages and losses.

WHEREFORE, Plaintiff's pray for relief as stated at the conclusion of this pleading.

## SEVENTH CLAIM FOR RELIEF - 11 U.S.C. §523(a)(6)
### (Willful and Wanton Misconduct)

328.     Plaintiffs incorporate by reference all of the paragraphs above, as if fully stated herein.

329.     11 U.S.C. § 523 (a) (6) states, in relevant part,

A discharge under ... this title does not discharge an individual debtor from any debt-——

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

330.     The burden of proof is on the creditor to establish by a preponderance of the evidence the debt is nondischargeable. *In re Longley,* 235 B.R. 651, 655 (10th Cir. BAP 1999) (citing *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). For a debt to be nondischargeable under 11 U.S.C. § 523(a) (6), the Plaintiff's must prove, "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *see also In re Moore,* 357 F.3d 1125, 1129 (10th Cir.2004).

331.     Intent may be established by either direct or indirect evidence. *In re Longley,* 235 B.R. at 657 (citing *CIT Financial Services, Inc. v. Posta,* 866 F.2d 364 (10th Cir.1989)). Willful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property. *Id.* Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's rights and the debtor's

33

knowledge that the conduct will cause particularized injury. *In re Longley,* 235 B.R. at 657 (citing *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek,* 983 F.2d 1524 (10th Cir.1993)).

332.     The Defendants' misrepresentations and omissions described above and the facts and circumstances surrounding same clearly show an intent to cause willful and wanton and malicious injury.

333.     The Defendants' caused this willful and malicious injury to the Plaintiffs and the Plaintiff's property.

334.     Revelations, Holy Grounds and Sowash made promise to Ramsays that the Ramsays money would be used to build their tiny home.

335.     Representations were made on multiple occasions by Revelations, Holy Grounds and Sowash that the Ramsay's money would be used to build their tiny home.

336.     Upon information and belief Revelations and/or Holy Grounds and/or Sowash received funds for the individual projects but did not use all of the monies for the payment of their labor, equipment, materials, supplies and goods including those of Ramsay.

337.     In reliance on the representations made by Revelations and Holy Grounds, Ramsays paid the within monies.

338.     In his capacity as acting manager/member of Revelations and Holy Grounds, Sowash was at all material times in complete control of the finances and financial decisions of Revelations and Holy Ground with respect to the disposition of construction contract trust fund payments received by Revelations and Holy Grounds on the various projects.

339.     Pursuant to C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds and Sowash were required to hold in trust all funds disbursed to Revelations and Holy Grounds by any owner and/or lender under their construction contract for the various projects for the payment of Ramsays for the contractual labor and services furnished on the various projects.

340.     Pursuant to C.R.S. § 38-22-127, et. seq., Revelations and Holy Grounds and Sowash were prohibited from diverting trust funds received from any owner and/or lender under their construction contract for the various projects to pay other obligations of Revelations and Holy Grounds and Sowash and was required to apply these trust funds toward the payment of amounts due and payable to its Sub-subcontractors, suppliers, and vendors on the various projects including Ramsays.

341.     Pursuant to C.R.S. § 38-22-127, et. seq. Revelations and Holy Grounds and Sowash were required to maintain separate records of account for trust funds disbursed by the various projects.

342.     Any corporate officer or director, who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of the trust committed by that entity pursuant to C.R.S. § 38-22-127 and is liable for civil theft pursuant to C.R.S. § 18-4-405.

343.     Through their actions as complained of above, Defendants' obtained money or a monetary benefit from Ramsays through fraud and false pretenses, false representations, or actual fraud.

344.     Through their actions as complained of above, Defendants' obtained money or a monetary benefit from Ramsays through violation of the trust fund statute.

345.     Defendants' actions constituted material and false misrepresentations of fact, false pretenses, and fraudulent behavior both at the time of the initial contracts and thereafter while Ramsays was performing the contracts.

346.     Defendants' intended that Ramsays rely on those material and false misrepresentations of fact, false pretenses, and fraudulent behavior at the time of Defendants' actions as complained of herein.

347.     Ramsays justifiably relied on Defendants' material and false misrepresentations of fact, false pretenses, and fraudulent behavior which induced Ramsays to enter into the contracts with Defendants' and to perform the contracts at a loss of approximately $58,130.00.

348.     Defendants' material and false misrepresentations of fact, false pretenses, and fraudulent behavior have damaged Ramsays in an amount of approximately $58,130.00 which amount may be further amended or adjusted for interest, attorney's fees, and other costs and charges as allowed by the Court.

349.     Defendants' actions as complained of herein constitute a criminal action, theft, as proscribed by C.R.S. § 18-4-40l, which criminal acts have damaged Ramsays in an amount of approximately $174,390.00, which amount may be further amended or adjusted for interest, attorney's fees, and other costs and charges as allowed by the Court.

350.     That has a direct and proximate result of Defendants' actions, Plaintiffs have been damaged in an amount in excess of $174,390.00 as well as for attorney fees and costs in the within litigation.

351.     Defendants' conduct was purposefully committed such that Defendants knew or should have known that their conduct was done heedlessly and recklessly, without regard to the consequences or to the rights of others, particularly the Plaintiffs.

352.     Plaintiffs damages and injury, and the conduct complained of and caused by Defendants', were attended by circumstances of fraud, malice, or willful and wanton conduct entitling the Plaintiffs to exemplary/punitive damages pursuant to C.R.S. § 13-21-102.

353.      Plaintiffs are entitled to interest on its damages in accordance with the applicable claims for relief and/or pursuant to C.R.S. § 5-12-101 and 102 et. seq.

354.      As a direct and approximate result of Defendants' actions, Plaintiffs have furthermore been damaged by Defendants' failure to comply with the Contract and Defendants' representations.

355.      As a direct and approximate cause and result of Defendants' actions, Plaintiffs have suffered the damages set forth herein and in an amount to be determined at the time of trial.

356.      As a result of Defendants' willful and wanton misconduct, Plaintiffs have suffered damages in an amount to be determined at trial.

357.      Defendants' actions were attended by circumstances of fraud, malice, or willful and wanton conduct entitling the Plaintiffs to exemplary damages  including but not limited to exemplary damages pursuant to C.R.S. § 13-21-102.

358.      The within described willful and malicious injury and damage to the Plaintiffs comes within the purview of 11 U.S.C. §523(a)(6), in that it constitutes willful and malicious injury by the Debtors to another entity and/or to the property of another entity.

359.      Plaintiffs are entitled to treble damages for all actual damages sustained by Plaintiffs, plus costs of the action and reasonable attorney's fees, pursuant to C.R.S. § 18-4-405.

360.      Plaintiffs are entitled to interest on its damages in accordance with the applicable claims for relief and/or pursuant to C.R.S. § 5-12-101 and 102 et. seq.

WHEREFORE, Plaintiffs pray for relief as stated at the conclusion of this pleading.

## EIGHTH CLAIM FOR RELIEF - 11 U.S.C. §523(a)(6)
(Civil Conspiracy)

361.      Plaintiffs incorporate by reference all of the paragraphs above, as if fully stated herein.

362.      "To establish a civil conspiracy in Colorado, a Plaintiff's must show: (1) two or more persons; (2) on object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." _**Nelson v. Elway**_, 908 P.2d 102, 106 (Colo. 1995). Civil conspiracy is a derivative cause of action that is not actionable per se. _**Double Oak Construction, LLC., v. Cornerstone Development Int'l, LLC**_, 97 P. 3d 140, 146 (Colo. App. 2003).  A transfer that violated CUFTA is a legal wrong that can support a claim of conspiracy. _Id._ If, however, "the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." _Id._

363.      Civil conspiracy requires a showing, by a preponderance, of five elements:

1.  two or more persons;

2.  with an object to be accomplished;

3.  with a meeting of the minds on the object or course of action to be accomplished;

4.  with one or more unlawful overt acts (i.e., an unlawful purpose or a lawful purpose accomplished by an unlawful means); and

5.  damages as a proximate result thereof.

364.    ***Contract Maintenance Co. v. Local No. 105, Building Service Employees Int'l Union***, 160 Colo. 190, 415 P.2d 855, 856 (1966) (en banc); ***Spears Free Clinic and Hospital v. Denver Are Better Business Bureau***, 135 Colo. 464, 312 P.2d 110, 112 (1957) (en banc). See also, ***Lockwood Grader Corp. v. Bockhaus***, 129 Colo. 339, 270 P. 2d 193, 196 (1954) (en banc)) Proof needed for a conspiracy.).

365.    Defendants' agreed by words or conduct to accomplish the unlawful goal of requesting further monies on more than one occasion from Plaintiff's without the ability or intent to build Plaintiff's tiny home.

366.    Defendants' further agreed by words or conduct to misuse trust funds received for the projects, services, and by requesting monies on multiple occasions without the ability or intent to build their tiny home.

367.    Defendants' agreed by words or conduct to fail to keep a separate accounting for each project in violation of the Trust Fund Statute.

368.    Defendants' agreed by words or conduct to accomplish the unlawful goal of utilizing trust fund monies for purposes other than the payment of suppliers and material men on the individual projects or jobs.

369.    Defendants' by their words or conduct conspired to misrepresent the facts and circumstances to Plaintiffs including the prospects for repayment or the trust funds received.

370.    Defendants' accomplished this unlawful conduct in agreement amongst themselves by words and deeds.

371.    Defendants' received monies from Plaintiffs for the specific purpose of building a tiny home which Defendants' never intended to build.

372.    Defendants' diverted trust fund funds which were entitled to be received by Plaintiffs for other purposes in violation of the Colorado Trust Fund Statute.

373.    Defendants' had the goal and object to continue to operate and obtain new accounts receivable based upon the services including services, labor, equipment, materials, supplies and goods of the Plaintiff's.

374.     As a proximate result of Defendants' civil conspiracy and overt actions, the Plaintiffs were damaged.

375.     Plaintiffs have been damaged in an amount to be determined at the time of trial.

376.     The above facts and circumstances make the debt pursuant to this claim non-dischargeable pursuant to 11 U.S.C. §523(a)(6) since it is a debt for money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, or false representation or actual fraud and accordingly pursuant to 11 U.S.C. § 523(a)(6)(A) is not dischargeable.

377.     Plaintiffs are entitled to treble damages for all actual damages sustained by Plaintiffs, plus costs of the action and reasonable attorney's fees, pursuant to C.R.S. § 18-4-405.

378.     Plaintiffs are entitled to interest on its damages in accordance with the applicable claims for relief and/or pursuant to C.R.S. § 5-12-101 and 102 et. seq.

WHEREFORE, Plaintiffs respectfully prays this Honorable Court enter the following Orders and Judgments in favor of the Plaintiffs and against the Defendants' as follows:

1.  Enter an Order denying the Debtors the dischargeability of the debt to the Plaintiffs and determining that said debt is not discharged pursuant to any discharge entered by the Court, pursuant to 11 U.S.C. §523 and §727 §1192; and

2.  Enter an Order and Judgment against Defendants' Matthew Sowash and Revelations and Holy Ground for Plaintiff's damages as claimed herein; and

3.  Enter an Order and Judgment determining the amount of Plaintiff's damages including as set forth in Plaintiff's Proof of Claim Number 26 filed in the Holy Ground case and Proof of Claim Number 57 in the Revelations case; and

4.  Enter an Order and Judgment for exemplary and punitive damages including but not limited to C.R.S. § 13-21-102; and

5.  Enter an Order and Judgment for treble damages in accordance with applicable statute; and

6.  Enter an Order and Judgment for Plaintiff's reasonable attorney's fees, costs of the action, and treble damages, pursuant to C.R.S. § 18-4-405; and

7.  Enter an Order and Judgment for Plaintiff's interest on their damages, costs, and attorney's fees; and

8.  Enter an Order and Judgment awarding the Plaintiffs their attorney's fees and costs; and

9.  For such other and further relief as this Court deems just and proper.

Dated: January 13, 2023        Respectfully Submitted:
**LINDQUIST-KLEISSLER & COMPANY, LLC**

By: _/s/Arthur Lindquist-Kleissler, Esq._
Arthur Lindquist-Kleissler, Esq. #9822
_Counsel to Plaintiff's_
950 S. Cherry Street, Suite 418
Denver CO 80246
Phone: (303) 691-9774
E-mail: ArthurALKLAW@gmail.com

g:\firm\clients\Ramsay, Kevin & Andra\Adversary Proceeding\230113 Complaint to Deny Discharge Holy Grounds